Good morning, Your Honors. David Gauntlet for Appellant KFx. I'd like to reserve three minutes for rebuttal. Just watch the clock, counsel. This case did not have the benefit of briefing of the Swift decision from the California Supreme Court as that postdated our reply brief. Tessera, which was an earlier case from the same district judge, did. And as the Court has before it both sets of briefs, I might note that some of the points made in the Tessera brief vis-à-vis the analogy to the Lamb decision and its applicability might also be germane here. There was a 28J letter that Travelers filed to which we responded on July 14th. But given that the case, as I mentioned in an article, is a case for all seasons, there's much there to address. Focusing on the disparagement coverage argument, I'd like to direct the Court's attention to the distinctions between Swift and our facts. You'll note that we have, per our press release, stated claims for objective studies cited that describe our product as superior to competing products. That's far different than a mere statement that a superior product exists. Counsel, what precisely are you relying upon for the actionable publication here? The press release, Your Honor, which is in the record and was made known to the insurer. Mr. Gauntlett, could you kindly repeat what you just said? A press release? Press release, yes. A press? Press release. That's Excerpt of Record 107. And there's not much in it, but one of the things it says is, brought to market innovative tissue fixation implants, and that studies have demonstrated the superiority of KFX's patented products. That is far different than the facts in Swift, where they had a patent pending, not patent in products. And I think it brings it within the logic of LAM, which Swift affirmed. What I'm missing is this. Walk me through slowly. Okay. You're saying that you get coverage because the allegations by Arthrex are that you disparage their product, correct? Yes. Now, tell me what words Arthrex used in making that claim. Well, first, there's five different places to look, given the role of extrinsic evidence under California law and the role of inferences from facts alleged and the role of the potential for amendment. The Scottsdale case, 2005 Supreme Court has stated in Swift. Perhaps I didn't express myself clearly. I am starting. I just wanted to mention that. You're telling me how to get to what I'd like you to get to. I'm doing that right now. Which is the words of Arthrex that said, KFXX has disparaged our product, namely? Right. In Excerpt to Record 665, Paragraph 7 of the counterclaim, they contend that KFX asserts that it has patent rights, the three sets of patents. In Paragraphs 8, 10, and 14 on the ensuing page, they mention the three different patents. So the first articulated basis for disparagement is that they contend that we assert patent rights. Let me ask you on that point. Do I understand correctly all they have sought is injunctive relief? Well, they have also sought attorney's fees, such other and further relief beyond that pled. And the potential for – The main relief is a declaratory judgment and an injunction. Is that right? That's correct. Now, tell me, my impression is that the policy doesn't cover injunctive relief. It only covers suits for damages. Is that right? Correct. It only covers suits for damages, but the suit for damages query can look at things like attorney's fees, which according to the Supreme Court of California in Powerine on 2001 is money ordered by a court. That's what attorney's fees are. For conduct, we engaged in what's allegedly wrongful that preceded anything that occurred in the litigation. They wanted a declaratory judgment that there was no infringement and that the patent was invalid and that the patent was unenforceable, if I understand correctly. Correct. Now, tell me why the patent exclusion doesn't cook your goose. Because it's not an infringement claim, and there is no violation of a patent claim available. The only claim for taking another's patent rights is infringement. So the words infringement or violation don't get you there because infringement is not asserted against us. We're asserting it against them. The litany of events is we have a complaint for patent infringement. We issue a press release that describes what I just mentioned. They then file a counterclaim. That counterclaim in paragraph G, it excerpts a record 676, seeks to enjoin us from threatening or charging infringement against Arthrex suppliers, customers, and distributors and users of its products. That's the key paragraph in the counterclaim. Why? Because it suggests, it infers, it implies that our conduct in reaching out to that audience is the problem that they're concerned about. They have elected for strategic advantage purposes per the Hudson 2010 decision from this court to not articulate a claim for tortious interference or unfair competition at that juncture. But the potential to amend to so state is implicit in paragraph G, understanding the litany of events that there occurred and so understood it's really no different than LAM. LAM dealt with a situation where the patent owner went to customers of the alleged infringer and advised them that they couldn't buy from the alleged infringer. In effect, that's what we've done by releasing the press release. And both parties in SWIFT conceded LAM was good law. To Judge Silverman's question, I think what you're saying is in relating these different steps of litigation, it all starts with you, with your client bringing a patent infringement suit. True? The initial patent infringement suit created a basis for liability against Arthrex, but Arthrex claims. No, no, pardon me. Let's be historical for a second. The first thing that happened was you sued or you, KFX, sued Arthrex for infringement of a patent, right? That event was the first. That is an intellectual property, is it not? It is. All right. Then they counterclaimed against you in that same suit. You claim that that counterclaim is impliedly a disparagement, alleges that you disparaged their products. Right. And I think you also claim that it was a claim of abusive process. Correct. But it all arises from the original patent infringement action. Well, all is the wrong operative word because you're forgetting Waller, Your Honor. Under Waller v. Truck Insurance Exchange, you have to only apply an exclusion to that conduct falling within coverage. That's the only relevant aspect of the activity that is of any note. You're claiming coverage, and they're claiming that the exclusion. Or conduct that is disparaging. The disparaging conduct is the press release activity that carries forward the threat to customers. That conduct has nothing to do with our patent infringement claim. So what you're just finding, you're suggesting that there might be certain aspects of this case that are not subject to indemnity because of the exclusion. Wonderful. Doesn't matter. That's not what you need to look at. You need to look at any possibility for coverage based on those fact allegations that evidence potential coverage, not those that don't. If all they're asking for is declaratory relief, how would there be any possibility of coverage? Because of the potential for amendment of the pleadings as the court in Burgett recognized, which was cited with approval by the Supreme Court in Swift. There, there was an unfair competition count. The court found the unfair competition count gave rise to disparagement claims because of the contest as to who had trademark rights in the marketplace. That contest, the court found, also fell outside the IP exclusion because there was a potential for amendment of that count to allege disparagement. That's what we're talking about. Swift goes to great lengths to distinguish Burgett and Epiphany. Epiphany was a situation where the nature of the position of one party was an important differentiator in the marketplace. Here, that important differentiator is the fact that we have a patent on key technology that they don't, and we claim it's superior to theirs. If you look at the Hudson case and its mention of strategic advantage, it appears that they were short-cutting, truncating the allegations to avoid having to assert what might obviously fall within coverage. But it came out in oppositions to our motion for summary judgment where they said our whole plan of action was not to compete in the marketplace, but to overzealously interpret our patent rights. Indeed, the abusive process claim is premised on the notion that we purportedly misled the PTO office to grant the patents and had the temerity to sue on them and then tell the public that our rights occupied the field and precluded anybody from competing. Did they ever make a claim for damages at all? There was no amendment of the pleadings per se. How about a demand letter, anything like that? Well, the injunction paragraph, as clarified by the opposition to the motion for summary judgment, evidence is that they contend that what we did — No, I'm sorry. Did they ever send you a demand letter saying you owe us X amount of money, anything like that? Nothing specific in that character, Your Honor. Again, but if you look at the Dobrin case, Market Lofts citing to Hudson, they all talk about subterfuge scenarios where the claimant is pulling in its horns, not being really articulate about a basis for liability. And if you map that against the concept that you look for the potential for amendment, look at the extrinsic evidence, which the district court ignored, it makes a difference. It only takes remote facts, according to Pension Trust, a 2002 decision of this court, to evidence the potential for coverage. And those remote facts, we think, flow from paragraph G of the prayer, when read in light of the opposition to the motion for summary judgment and the various advertisements that are referenced in the motion activity. The motion activity is where this case got legs. The Dish case from the Tenth Circuit talked about notice pleadings as being limited parameters to assess possible coverage and the importance of penetrating beyond them. That penetration here, I think, makes a difference. I see I'm almost to my rebuttal time, Your Honor. Very well. Thank you, Counsel. You have reserved time. We'll hear from the insurance company. Yes, good morning, Your Honors. I'm Bruce Celebrezzi for Travelers Property and Casualty Company. There are three separate and independent reasons, Your Honor, that this court should affirm the decision of the district court and find that Travelers had no duty to defend KFX against the allegations in the Arthrex counterclaim. First, Your Honors have already touched on, there was no allegation whatsoever in the counterclaim that could possibly fit into any of the personal injury offenses of either disparagement or abusive process, which this court has previously found is subsumed into the offense of malicious prosecution. Well, wasn't there an allegation that you started a frivolous patent infringement suit in that abusive process? No, Your Honor. The allegation in the counterclaim, which is in the record at page 676, one of the relief that was sought by Arthrex was for a declaratory judgment that the patent should be unenforceable because KFX had engaged in inequitable conduct before the PTO. There's, A, no allegation whatsoever that KFX did anything in the PTO process that misused the process of the PTO, misused being critical. But most importantly, and we cite these cases in our briefs, there's a case called Abbott Labs from the Federal Circuit, which is basically, I would analogize it to a preemption case. In that case, the same allegation was made that one of the parties had, basically his counsel had withheld information from the PTO during the prosecution process, and an abusive process claim was brought in the district court, and there was actually a jury trial and a judgment. And the Federal Circuit reversed that, stating that one cannot have, there is no such thing as a state court abusive process to essentially collaterally attack the PTO. So as a matter of law, the claim about whatever happened at the PTO cannot support an abusive process claim. And we also cited a case from the California Court of Appeal called Stoltz, where two parties were trying to obtain a license for a radio station from the FCC. And there was some pushing and shoving, and one brought an abusive process claim against the other. And the California Court of Appeal held that a claim before an administrative agency could not support an abusive process claim. And why is that? Because the abusive process tort is meant to protect the integrity of the judicial system, not an administrative system. But even if it were broader, as Your Honor is suggesting, there is no allegation whatsoever in the counterclaim of misuse. The law of abusive process is that the filing of an action is not an element. The prosecution of an action is not an element. Even an ulterior motive in and of itself is not an element. Your point is that mere filing of a frivolous lawsuit may be malicious prosecution, but it is an abusive process. Correct. But isn't California law – doesn't California law make abusive process and malicious prosecution one and the same thing? Well, only for purposes of determining whether or not it is an offense for insurance coverage purposes. There are still two separate and distinct torts, and there was no claim here. Counsel doesn't even claim that there was a – If it's for purposes of defining the offense, does that define coverage under California law, that if you say abusive process, you're invoking coverage under the grant of coverage because it means the same thing as malicious prosecution? That's what this Court has said in the Lunsford case. But in this case, notwithstanding that, the elements are not pled either in the complaint or in the extrinsic evidence. There's a lot of discussion about extrinsic evidence. The elements of malicious prosecution are not pled? Abusive process is not pled, nor is malicious prosecution, but KFX is not even asserting that it was. So there is no evidence either in the counterclaim or in the extrinsic facts that remotely suggests that there's even a possibility of the abusive process tort being asserted here. Likewise, there is no evidence that would create a potential for coverage for disparagement. Again, in the Swift case, which, as counsel indicated, has been brought to Your Honor's attention through our letter briefs, in 2014, the California Supreme Court set out the state of the law today in California on disparagement. And Justice Liu, speaking for the Supreme Court, stated that in order for there to be a claim presented for a disparagement, there has to be a false and misleading statement that specifically refers to the plaintiff's product or business and clearly derogates the product or business. And there has to be either an express mention of the allegedly injured party or that entity has to be identified by clear implication. And this fits very well into the insurance policy definition of disparagement because the policy covers oral or written publication that disparages a person's or organization's goods, products, or services. Well, there's nothing, not a single word in the counterclaim itself referring to any statement of any nature, true or false, by KFX against Arthrex. And so KFX asked, Your Honors, to look at extrinsic evidence, very, like, four pieces of, four documents. But we were talking— Counsel seems to rely on the press release as a whole. Yes, Your Honor. What's the problem? Well, the press release is in the record. It's quoted in the record on pages ER 108 and 109. And it's a very short press release. It was issued the very day that the KFX versus Arthrex patent infringement suit was filed. And the first couple of paragraphs simply say, you know, we filed a suit and we've got great lawyers. And then the third paragraph, it makes no reference whatsoever to Arthrex. It simply makes a statement that studies show that there's a demonstration of the superiority of the double row repair of rotator cuff pairs. And then there's a paragraph that an anonymous party had previously complained to the PTO about KFX's patent, and the PTO had rejected those arguments and upheld the patent. There's nothing whatsoever that suggests in this press release, and Your Honors can read it forwards, backwards, any way Your Honors want, that suggests any false or misleading statement directed to Arthrex. Well, by the mere filing of a patent infringement suit and saying our patents are good and Arthrex is violating our patents, doesn't that imply that Arthrex's products are bad? Your Honor, I don't believe there's any law that would support the notion that the filing of a lawsuit can support an independent tort, such as disparagement. Wouldn't that mean, Your Honor, that every single person who sues somebody is subject to being sued for disparagement? I suppose in this case, we sued, travelers sued, seeking a declaratory judgment. Does that mean that KFX can say, well, you implied that there was no coverage and that made our business look bad, and therefore that's disparaging? Do you have some authority that the mere filing of a suit for alleging patent infringement does not constitute disparagement? My authority is that there is a privilege in Civil Code Section 47 that applies to statements made in litigation. So that's my authority. That goes to the merits, not the question of coverage. It doesn't go to the merits, Your Honor, in the question that Your Honor is asking. It would be different, and counsel cites the Lam case, if prior to having filed the lawsuit, if KFX was running around telling its customers, you know, you really shouldn't be buying Arthrex's products because they're infringing our patent, that's completely extrajudicial. It would have nothing whatsoever to do with the litigation. But there is no case law, Your Honor, so I can't cite a negative, that says that a cause of action for disparagement can be obtained from the mere filing of a suit. How does the exclusion apply? The exclusion, of course, would only come into play in the event that there was otherwise a potential for coverage, but it is absolutely 100 percent on point to this situation. The exclusion has been cited repeatedly in California and in this district, in the districts in this circuit, as well as by this court over the last dozen or so years. And there's two prongs to the exclusion, which is in the record at page 519, the first of which says this insurance does not apply to personal injury and advertising injury arising out of any actual or alleged infringement or violation of any of the following rights or laws, and then there's a list, number two is patent, number seven is other intellectual property rights or laws. But then there's the second prong, and the second prong says that the insurance does not apply to any other personal injury or advertising injury alleged in any claim or suit that also alleges any such infringement or violation. So if I sort of plug in the words, if Your Honors were to find that there was a potential for either abuse of process or disparagement, the exclusion would still apply because it says the insurance doesn't apply to any other personal injury, those two, alleged in a suit that also alleges infringement or violation of patent rights or laws. Well, that is exactly what we have here. And the most critical case, Your Honors, is the molecular bioproducts case, which we've cited. Now, that is a district court case from Judge Irma Gonzalez in the Southern District of California, but it has been repeatedly cited, including by the California Court of Appeal and in a case that was affirmed by this court. There's a case called SBCC, which we cite in our brief. In that case, there were 11 causes of action. There were competitors in the construction industry. One of the causes of action was for trade secret infringement, in other words, an intellectual property claim, and the other 10 weren't. And in that case, the Court of Appeal nonetheless found, contrary to what KFX is arguing here, that the exclusion is broad enough to provide no duty to defend, not just for the IP claim, but for all of the other claims. Why? Because they are pleaded in a suit that also alleges the IP claim, and the court heavily relies on molecular bioproducts in reaching that conclusion. Similarly, there was a case called Ventana, which came up through the District of Arizona, but was affirmed by this court in a very short opinion, so this court did not cite molecular, but the district court relied very heavily on molecular in a very similar situation where there was a patent infringement claim. The same counsel who represents KFX here represented Ventana in that case and argued that one could read into the pleadings a claim because there were press releases and websites implied disparagement, and the district court in that case found, regardless, it didn't reach that issue, but it said relying on molecular bioproducts, that because those claims, whatever they were, arose in a case that also involved violations of patent infringement or patent laws, the exclusion applied no duty to defend at all. And the molecular case itself, it is so rare that we have a case that is so on point to the facts that we have here today. In molecular, molecular and Porex were competitors in this business. They make pipette devices, which are apparently glass tubes that one uses in a laboratory setting. So molecular sues Porex for patent infringement, just like KFX sued Arthrex here. Porex files a counterclaim against molecular, just like, again, Arthrex filed a counterclaim against KFX here. In its counterclaim, Porex has seven causes of action. Here there's only three, but the first three causes of action asserted by Porex are identical to the three causes of action we have here. A declaration that Porex's products don't infringe molecular's patents, a declaration of patent invalidity, and a declaration that the patents were unenforceable because of molecular's allegedly inequitable conduct before the PTO. And Judge Gonzalez in that case found that the exclusion was clear, explicit, and dispositive. That in that case, again, the same counsel represented molecular, Mr. Gauntlet, and he argued that based on the allegations there, even though there were no causes of action, it could be abusive process, it could be malicious prosecution, it could be disparagement. But again, Judge Gonzalez, not reaching that issue, nonetheless found that when you have allegations that are other personal injury arising or alleged in a suit that also contains allegations of infringement or violation of patent rights or laws, that the exclusion applies. And there are six or seven other district court cases that also reached the same conclusion relying on molecular bioproducts. There is no case that we have found applying this exclusionary language to this fact scenario that has not enforced the exclusion. Counsel argues that, well, there's no claim in the counterclaim for patent infringement, but there doesn't have to be. The language says, alleged the following rights or laws and such infringement or violation. Well, surely an allegation by Arthrex against KFX, that KFX abused in some way, was engaged in unethical conduct before the PTO, is a violation of patent laws. And there is no way that the KFX can really wiggle out of that exclusion, Your Honor, even if this court were to find either that there was a potential for coverage for one of the two offenses or, as Your Honor was saying earlier, there was no claim for damages and the policy only covers damages. Your position is that attorney fees are not damages within the meaning of damages in California law? Correct, Your Honor. We cite the Cutler-Rossi case and the Health Net case for that. So for all those reasons, we would ask, Your Honors, to please affirm the decision of the district court and find no duty to defend. Thank you, Your Honors. Thank you, counsel. Mr. Gauntlet, you have some reserve time. Your Honor, the Storack case was addressed in our opening brief at length, and they elected not in the appellee's brief to respond at all to our attack on the inapplicability of Storack. As to the arising out of language, Capurro, citing Partridge at Cal Supreme Court, had asked for 25 notes. The broad coverage narrow exclusion principle is well illustrated with respect to the phrase arising out of. So it's narrowly interpreted, even though the phrase arising out of might otherwise be broad. The Gonzales case from the California Court of Appeal is of the same ilk. Despite the semantic gymnastics of travelers, if you look at the Pinnacle case, which is the last in the litany of post-molecular cases, on the 30th of November we filed a 28-J response, which I think is illustrative of the shortcomings of molecular. To wit, there is no claim for relief for violation of a patent, only infringement. So the Court's speculation in molecular, that that's what the word violation meant, is ungrounded by any knowledge of patent law. The word violation makes sense because there's trade secret claims that can be deemed violations, but it doesn't extend to patent. The district court didn't reach the exclusions for good reason, because, no, they couldn't apply. As to this privilege argument. On your point about post-molecular, are you suggesting these later cases somehow cast some doubt on molecular? Is that what you're saying? I'm saying that molecular had a deficient legal analysis that no one's brought to the Court's attention. That under Rosen, for the Cal Supreme Court, a case is not authority for proposition. It doesn't address. And no one has attacked molecular on those grounds. There's also another problematic ground in FIBUS, a published decision of this Court. If you have a buried, a mandatory endorsement that purports to eliminate coverage, it can't be given that effect unless you tell the insured what you're taking away. They don't tell us they're taking away the defense of a mixed action, which is a settled concept of California law for decades. I cite the Concept Enterprises case, which found that bad faith is a matter of law for a carrier not to defend the entire action. Because that's what they would have expected, not that some buried reference to an excluded claim would exclude the entirety of the whole lawsuit, even if you find that a violation does extend to claims for the DEC relief suits. So I just don't think you get there. As to privilege, privilege is a defense. Under Horace Mann's 1993 decision of the Supreme Court, it's something that has to be raised in the underlying suit. The carrier's job is to show up, perform, and help us get rid of a claim that is problematic. And as to EFI is the key case on abusive process, it says sham pleadings are enough, citing back to CNA to show that a defense arose. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Silverman, Bea